IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| FRANK ABELLA, | No. 2:15-cv-00424-JKS |
|---|---|
| Petitioner, | MEMORANDUM DECISION |
| vs. | |
| DAVID BAUGHMAN, Warden, California State Prison-Sacramento,[1] | |
| Respondent. | |

Frank Abella, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Abella is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California State Prison-Sacramento. Respondent has answered, and Abella has not replied. On January 13, 2017, this Court denied the petition for habeas relief filed by Abella's co-defendant, James Washington, in *Washington v. Vazquez*, No. 2:14-cv-01618-JKS. Abella's Petition involves the same facts but presents different claims for relief.

I. BACKGROUND/PRIOR PROCEEDINGS

On March 5, 2009, Abella, along with his co-defendant Washington, was charged with first-degree murder committed during the commission of a robbery, second-degree robbery, and torture. The information further alleged as to all counts that Abella personally used a deadly and dangerous weapon while committing the offenses. Abella pleaded not guilty and denied the

---

[1] David Baughman, Warden, California State Prison-Sacramento, is substituted for M.D. Biter, former Warden, Kern Valley State Prison. FED. R. CIV. P. 25(c).

allegations. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Abella:

> During the early morning hours of June 7, 2008, [Abella] and Washington were hanging out together at an apartment complex in Rancho Cordova where [Abella]'s mother lived. At the time, Washington was dating Abella's sister, E.G., who was also present. Abella was several weeks shy of his 18th birthday.
> At approximately 2:40 a.m., [Abella] and Washington walked to a nearby 7–Eleven store. The events that occurred thereafter were captured in large part on surveillance cameras mounted at the 7–Eleven and at an adjacent check-cashing store.
> At approximately 2:50 a.m., [Abella] and Washington left the 7–Eleven and approached 50–year–old William Deer, who was sitting on a curb outside the check-cashing store drinking coffee he had just purchased at the 7–Eleven. Deer was both mentally and physically handicapped due to a motorcycle accident more than 20 years earlier.
> Earlier that evening, Deer's mother had dropped him off at a bus stop in Sacramento so he could visit friends in Rancho Cordova. At the time, Deer wore a fanny pack around his waist in which he carried various personal items, including a cell phone charger, a toothbrush, cigarettes, and money. He also carried with him a cell phone. Deer was wearing the fanny pack in the 7–Eleven approximately 30 minutes before he was approached by [Abella] and Washington.
> What transpired during the initial encounter with Deer is not altogether clear. However, what is clear is that, at some point, [Abella] and Washington beat, kicked and stomped on Deer and then ran from the scene.
> Approximately 30 minutes later, Washington returned to the area with E.G. By that time, Washington had changed his shirt. The two approached Deer, who was still lying where [Abella] and Washington had left him following the beating. E.G. could see that Deer was hurt but he was still alive. Washington and E.G. departed.
> Seven minutes later, [Abella] and Washington returned to where they had left Deer. Less than a minute later, they again ran from the scene.
> [Abella] and Washington returned a third time approximately 30 minutes later, this time with a BB gun. They shot Deer 19 times in the face and abdomen and then fled the scene.
> Police were eventually dispatched to the 7–Eleven and found Deer still alive. They did not find a fanny pack or cell phone in the area; nor did they find any identification for the victim. Deer was taken to the hospital, where he later died. The cause of death was determined to be multiple blunt force head injuries plus multiple BB pellet injuries.
> Five days later, [Abella] and Washington were arrested. They were charged with murder, robbery and torture and were tried separately.

*People v. Abella*, No. C066010, 2013 WL 28896, at *1-2 (Cal. Ct. App. Jan. 3, 2013).

At the conclusion of Abella's trial, the jury found Abella guilty of all counts and also found true the special circumstance alleged in Count 1 and the weapon enhancement alleged as to Counts 1 and 3 (it found not true the weapon enhancement alleged as to Count 2).[2] The trial court subsequently denied Abella's request for probation and sentenced him to serve a term of life imprisonment without the possibility of parole ("LWOP") for committing murder while engaged in robbery, consecutive to a 2-year term for the robbery conviction, consecutive to a life term for the torture conviction, plus 2 consecutive 1-year terms for the personal use of a dangerous or deadly weapon alleged as Counts 1 and 3.[3] The court stayed the punishment imposed on Counts 2 and 3 pursuant to California Penal Code § 654.[4]

Through counsel, Abella appealed his conviction, arguing that: 1) there was insufficient evidence to support the robbery conviction and special circumstance allegation; and 2) his LWOP conviction constituted cruel and unusual punishment in light of the nature of the offense and Abella's age and mental disabilities. Counsel also filed a supplemental brief arguing that Abella's sentence violated *Miller v. Alabama*, in which the U.S. Supreme Court held that the Eighth Amendment forbids a sentencing statute that requires a sentence of LWOP for juvenile offenders. 132 S. Ct. 2455, 2469 (2012); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 736

---

[2] Washington's jury found him guilty of all counts and also found true the enhancements alleged on each count.

[3] The court imposed a nearly-identical sentence upon Washington, except his sentence included an additional consecutive 1-year term for the weapon enhancement alleged as to Count 2.

[4] Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." CAL. PENAL CODE § 654.

3

(2012) (holding that *Miller* announced a new substantive constitutional rule that was retroactive on state habeas review). The brief also contended that there was insufficient evidence of torture. In a reasoned, unpublished opinion issued on January 3, 2013, the Court of Appeal affirmed the judgment against Abella in all respects. *Washington*, 2013 WL 28896, at *8.[5] Abella petitioned for review in the California Supreme Court, which was denied on April 10, 2013.[6]

---

[5] The Court of Appeal likewise affirmed the judgment against Washington. *People v. Washington*, No. C065636, 2013 WL 29097, at *13 (Cal. Ct. App. Jan. 3, 2013).

[6] The California Supreme Court denied the petition without prejudice to any relief to which Abella might be entitled after it decided *People v. Gutierrez*, No. S206365. Roughly one later, the Supreme Court in *Gutierrez* held that Section 190.5(b) of the California Penal Code gives a sentencing court the discretion to impose either LWOP or a term of 25 years to life on a 16- or 17-year-old juvenile convicted of special circumstance murder, with no presumption in favor of LWOP. 324 P.3d 245, 267 (Cal. 2014). In so holding, the *Gutierrez* court disapproved *People v. Guinn*, 33 Cal. Rptr. 2d 791, 797 (Cal. Ct. App. 1994), in which the California Court of Appeal had interpreted Section 190.5(b) to mean "that 16 or 17-year-olds who commit special circumstance murder *must* be sentenced to LWOP, *unless* the court, in its discretion, finds good reason to choose the less severe sentence of 25 years to life." The *Gutierrez* court concluded that a presumption in favor of LWOP as stated in *Guinn* would raise serious constitutional concerns in light of *Miller*. *Gutierrez*, 33 Cal. Rptr. 2d at 262.
   Here, Abella was sentenced to LWOP after being convicted as a juvenile of special circumstance murder. The record reflects that the sentencing judge cited *Guinn* when imposing Abella's LWOP sentence as "authorizing . . . a presumptive penalty of life without parole for a 16- or 17-year-old special circumstances murderer or at the discretion of the Court 25-years-to-life." Reporter's Transcript at 763. Abella has not raised in this Petition a sentencing claim challenging his LWOP sentence pursuant to *Gutierrez*. In a previous filing with this Court, Abella moved for a stay and abeyance in these proceedings, indicating that he was to be re-sentenced under *Miller* in Superior Court. Docket No. 24. A previously-assigned Magistrate Judge denied the stay request without prejudice, and set a deadline for the parties to file a stipulation that these proceedings be stayed pending resolution of Abella's re-sentencing request. Docket No. 25. Neither party submitted any filings regarding Abella's re-sentencing request, *see* Docket No. 26, and the publicly-available dockets of the California courts do not indicate whether Abella has been re-sentenced. Thus, nothing has changed that would warrant this Court to reconsider the earlier denial of Abella's motion to stay.
   Judgment in this matter, however, does not prevent Abella from filing a habeas petition in the California courts that challenges his LWOP sentence under *Gutierrez*, *Miller*, and *Montgomery*. Likewise, because the Supreme Court denied his petition for review without prejudice, he may be able to renew his direct appeal sentencing claim to that court by filing

4

Abella then filed a *pro se* petition for habeas relief in the California Superior Court in which he alleged that counsel was ineffective for failing to "track down and secure" as a witness Todd Schoborg, a homeless man who called 911 to report finding the victim and for arguing during closing without Abella's consent that the jurors should convict on the two lesser-included offenses of voluntary manslaughter and involuntary manslaughter. He additionally argued that his Sixth Amendment right to confrontation was violated by the prosecution's play of Schoborg's 911 call. The Superior Court denied the petition in a reasoned, unpublished opinion issued on March 21, 2014. Abella raised the same claims in habeas petitions filed in the Court of Appeal and Supreme Court, which were summarily denied on May 1, 2014, and December 17, 2014, respectively.

Abella then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on February 3, 2015. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Abella raises the three claims he unsuccessfully raised to the state courts by habeas petition. First, he argues that trial counsel was ineffective for failing to call Schoborg as a witness. He additionally contends that trial counsel was ineffective for arguing on summation that jury should find Abella guilty of lesser-included offenses and not guilty of special-circumstance murder. Finally, he claims that his right to confrontation was violated by the admission of Schoborg's 911 call.

---

another petition for review.
5

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Abella has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

A.    <u>Ineffective Assistance of Counsel</u> (Grounds 1 and 2)

Abella first argues that trial counsel was ineffective for failing to secure and call as a witness the homeless man who placed the 911 call that he had found the victim's body and for arguing during summation that the jury should convict Abella of the lesser-included offenses rather than for special circumstances murder.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.[7] *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

---

    [7]    *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

>The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Abella must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Neither of Abella's ineffective assistance claims have merit. As an initial matter, Respondent points out that, in denying Abella's claims on state habeas review, the state court cited *In re Swain*, 209 P.2d 793, 796 (Cal. 1949), and *In re Harris*, 855 P.2d 391, 397 n.5 (Cal. 1993) in finding that his claims were barred because he failed to either allege his claims with sufficient particularity or support the claims with reasonably available documentary evidence. After reviewing the facts and applicable law, the Court agrees that the nature of the procedural bar means that his claim that counsel was ineffective for failing to call Schoborg as a witness (Ground 1) fails to meet the exhaustion requirement because it was not"fairly presented" to the state courts.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). "The state-law claim may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011). Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case "clearly and expressly" states that its judgment rests on a state procedural bar. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)). "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

*In re Swain* stands for the rule that a California habeas petition must state "with particularity the facts" upon which relief is sought. 209 P.2d at 796. *In re Harris* stands for the additional proposition that documentary evidence must be provided. 855 P.2d at 397 n.5 ("Such factual allegations should also be supported by '[reasonably available] documentary evidence and/or affidavits." (quoting *In re Clark*, 855 P.2d 729, 749 n.16 (Cal. 1993)). If a petition is dismissed for failure to state the facts with particularity—that is, with a cite to *Swain*—the petitioner may file a new petition curing the defect. *See Gaston v. Palmer*, 417 F.3d 1030, 1037 (9th Cir. 2005); *see Kim v. Villalobos*, 799 F.2d 1317, 1319 (9th Cir. 1986). There is no reason

10

the result should be any different when the defect in the state petition is the failure to attach documentary evidence. Neither the failure to attach documentary evidence nor the failure to plead with particularity are irremediable errors. It therefore appears that the California courts would have allowed Abella to file a new state petition remedying these defects. Accordingly, the *Harris/Swain* bar did not cause these claims to be procedurally defaulted in state court and thus this bar does not cause them to be procedurally defaulted in federal court either. *See Cross v. Sisto*, 676 F.3d 1172, 1177 (9th Cir. 2012) (California state court's denial of petitioner's habeas petition with citation to *Swain* constituted dismissal without prejudice and with leave to amend to plead required facts with particularity and thus did not signify that petitioner's claims were procedurally barred as a matter of state law).

However, in *Kim*, the Ninth Circuit also stated that it was "incumbent" on the district court, in determining whether the federal standard of "fair presentation" of a claim to the state courts had been met, to independently examine Kim's petition to the California Supreme Court. 799 F.3d at 1320. "The mere recitation of *In re Swain* does not preclude such review." *Id.* A review of Abella's state petition here shows, as Respondent has noted, that Abella failed to recite sufficient facts to address his claim in Ground 1 that counsel was ineffective for failing to call Schoborg as a witness. In his state habeas petitions, Abella states only that "Counsel's failure to secure Schoborg as a witness so that he could produce testimony on behalf of the Petitioner's defense was detrimental. Schoborg could've produced testimony that could've helped the Petitioner in his fight against the murder-robbery allegation. Had counsel secured Schoborg as a witness, the outcome of this trial would've been different." A review of the record thus reveals

that this ineffective assistance claim was tersely presented, without factual detail or elaboration as to how Abella's testimony would have been helpful.

Accordingly, the California courts' denial of this claim with citations to *Swain* and *Harris* indicate that it was not "fairly presented" to the state high court and that Abella could have re-submitted a state habeas petition with greater specificity but did not. Abella's failure to do so means that this ineffective assistance claim is unexhausted. *See Rose v. Palmateer*, 395 F.3d 1108, 1111 (9th Cir. 2005) (stating federal nature of claim must be pled with specificity before state courts and substance of alleged violation must be pled with some particularity in order to satisfy exhaustion requirement); *see also Picard v. Connor*, 404 U.S. 270, 278 (1971) (holding that the substance of a federal habeas corpus claim must first be presented to the state courts). Ground 1 is therefore denied as unexhausted.[8]

---

[8] Because there is no strict time limit for filing a state habeas petition in California, it appears that Abella could still adequately present this claim to the state court. *See In re Clark*, 855 P.2d 729, 764 (Cal. 1993). This Court could therefore stay the Petition and allow Abella to return to state court to satisfy the exhaustion requirement. *See Mena v. Long*, 813 F.3d 907, 911 (9th Cir. 2016). However, Abella has not requested that this Court stay and hold his petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claims are "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). District courts within the Ninth Circuit have found "good cause" to require at a minimum a showing of some "circumstance over which [petitioner] had little or no control" that prevented the petitioner from asserted the unexhausted claims in state court. *Ringer v. Crawford*, 415 F. Supp. 2d 1207, 1211 (E.D. Nev. 2006); *see also Hernandez v. Sullivan*, 397 F. Supp. 2d 1205, 1207 (C.D. Cal. 2005) (adopting the "good cause" standard of procedural defaults in which "a petitioner ordinarily must show that the default resulted from an objective factor external to the petitioner which cannot fairly be attributed to him"). Abella does not reply to Respondent's opposition, and therefore does not make any argument regarding or showing of good cause. Accordingly, the Court finds that Abella has not demonstrated good cause for his failure to exhaust and declines to exercise its discretion to stay the Petition and hold it in abeyance under *Rhines*.

Moreover, the lack of particularity also bars any meaningful review of Ground 1 in federal court, independent of his failure to fairly present the claim to the state courts. *Pro se* habeas filings must be construed liberally. *See Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) ("We must construe pro se habeas filings liberally.") (internal quotation marks and citations omitted). However, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Jones v. Gomez*, 66 F.3d 199, 204-205 (9th Cir. 1995); *Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir. 2011) ("[C]ursory and vague claim[s] cannot support habeas relief."). A petitioner must state his claims with sufficient specificity. *See Wacht v. Cardwell*, 604 F.2d 1245, 1246-47 (9th Cir. 1979). Here, Abella has not shown that, at the time of trial, Schoborg would have been willing to testify, what his testimony would have been, or that the testimony would have been sufficient to create a reasonable doubt as to his guilt. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that a witness would provide favorable testimony on petitioner's behalf is insufficient to establish *Strickland* prejudice); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Abella's vague and conclusory statement that Schoborg would have provided helpful testimony sufficient to change the outcome of his case is insufficient to warrant relief. *See Blackledge v. Allison*, 431 U.S. 63, 75 (1977) ("The allegations in this case were not in themselves so vague (or) conclusory as to warrant dismissal for that reason alone.") (internal citations and quotation marks omitted). Because Abella has failed to provide a factual basis for this claim, the state court's denial of it was reasonable and not contrary to federal authority.

Nor is Abella entitled to relief on his claim that counsel was ineffective for arguing in favor of a lesser-included offense. A review of the record reflects that the California Supreme

Court could reasonably have found that the challenged conduct was tactically motivated to avoid a greater conviction and steeper sentence. Unsuccessful trial strategies are not alone ineffective assistance. *See Strickland*, 466 U.S. at 699 (counsel not ineffective even though defense strategy was unsuccessful because his strategy was the result of reasonable professional judgment). In light of the strong evidence against Abella, Abella's unsupported speculation that the result of his trial would have been different absent counsel's arguments in favor of the lesser-included offenses is insufficient to establish relief. *See Landry v. Lindsey*, 8 F. App'x 650, 651 (9th Cir. 2001) ("Although counsel conceded some guilt and recommended that the jury consider the lesser included offense . . . , we cannot, in light of the substantial evidence against [the defendant] and his impeached testimony at trial, conclude that such an approach was outside the range of sound trial strategy."). Abella therefore cannot prevail on either of his ineffective assistance claims.

B.  Confrontation Violation (Ground 3)

Abella additionally claims that his right to confrontation was violated by the admission of Schoborg's 911 call. The Confrontation Clause of the Sixth Amendment mandates that a criminal defendant has the right to confront and cross-examine the witnesses against him. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). This generally means that out-of-court testimonial statements by a witness are not admissible against a defendant unless the witness is available for cross-examination at trial or the defendant had an opportunity to cross-examine the witness about the statements before trial. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). The Confrontation Clause applies only to "'witnesses' against the accused, i.e., those who 'bear testimony.'" *Id*. at 51 (citation omitted); *Davis v. Washington*, 547 U.S. 813, 823–24 (2006).

14

"'Testimony,' in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (citation and some internal punctuation omitted); *Davis*, 547 U.S. at 824. As the *Davis* court explained:

> [a] critical portion of [*Crawford*'s] holding . . . is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

*Davis*, 547 U.S. at 821 (citation omitted). Thus, nontestimonial statements do not implicate the Confrontation Clause. *Giles v. California*, 554 U.S. 353, 376 (2008); *Whorton v. Bockting*, 549 U.S. 406, 420 (2007).

The Supreme Court in *Crawford* did not "spell out a comprehensive definition of 'testimonial,'" "but it indicated that testimonial evidence includes, among other things, "police interrogations." *Michigan v. Bryant*, 562 U.S. 344, 131 S.Ct. 1143, 1148 (2011) (quoting *Crawford*, 541 U.S. at 68). Subsequently, in *Davis*, the Supreme Court explained that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.

Further, in *Bryant*, the Supreme Court clarified that:

> [W]hen a court must determine whether the Confrontation Clause bars the admission of a statement at trial, it should determine the 'primary purpose of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs. The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an

15

ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation.

131 S.Ct. at 1162.

Here, the record reflects that the Schoborg volunteered to the 911 operator that he had seen 3 people standing by an injured man and that he had seen "some individuals out here earlier beating people up." Schoborg was not subjected to any interrogation prior to making the declaration, and the exchange of information lacked all the hallmarks of a traditional police interrogation conducted to prepare for a later criminal prosecution. It therefore was not an objectively unreasonable application of clearly established federal law for the California courts on state habeas review to conclude that the 911 call was not testimonial. As in *Bryant*, the objective circumstances of the encounter indicate that the primary purpose of the statement was to "enable police assistance to meet an ongoing emergency." 131 S. Ct. at 1166-67 (finding that a shooting victim's statements were nontestimonial when he was questioned in a parking lot prior to the arrival of emergency medical services by multiple officers in a disorganized fashion); *see also Davis*, 547 U.S. at 828 (finding that an assault victim's initial responses to questions by a 911 operator were nontestimonial). Accordingly, Schoborg fails to show that the California courts' rejection of his Confrontation Clause claim was contrary to, or an unreasonable application of, clearly established authority of the Supreme Court. He is not entitled to relief on this ground.

## V. CONCLUSION AND ORDER

Abella is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 14, 2017.

                                                  /s/James K. Singleton, Jr.
                                                  JAMES K. SINGLETON, JR.
                                                  Senior United States District Judge